## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 03 2019, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of J.E.J.P. (Minor Child) and A.W. (Mother) & J.P. (Father);

A.W. (Mother) & J.P. (Father),

*Appellant-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

December 3, 2019

Court of Appeals Case No. 19A-JT-1470

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen, III, Judge

Trial Court Cause No. 85C01-1811-JT-16

**May, Judge.**

[1] A.W. ("Mother") and J.P. ("Father") (collectively, "Parents") appeal the involuntary termination of their parental rights to J.E.J.P. ("Child"). Parents argue the trial court's findings do not support its conclusions that the conditions under which Child was removed from Mother's care would not be remedied, that the continuation of the parent-child relationship posed a threat to Child's well-being, and that termination of Parents' rights to Child was in Child's best interests. Mother[1] also challenges the trial court's conclusion that there was a satisfactory plan for Child's care following termination. We affirm.

# Facts and Procedural History

[2] Mother and Father are parents of Child, born March 30, 2004. Parents were not married, though paternity had been established and custody awarded to Mother in a previous legal proceeding. On November 25, 2016, Mother and her then-boyfriend, T.W., took Child to the Lighthouse Mission so that Father could sell heroin to T.W. T.W. and Father began to argue about the quality of the heroin, and T.W. stabbed Father. Child, who was fourteen years old at the time, was present during the incident. Father was taken to the hospital, and officers arrested Mother and T.W. Child was removed from Mother's care.

---

[1] The trial court's order found: "[Father] supports the DCS' current plan for adoption. He fully realizes the implications for him." (App. Vol. II at 49 n.12.) Father does not challenge that finding on appeal and, accordingly, does not challenge the court's conclusion as to the plan for Child's care being satisfactory.

[3]     On November 29, 2016, the Department of Child Services ("DCS") filed a petition alleging Child[2] was a Child in Need of Services ("CHINS") based on Parents' drug use and the incident on November 25.  On December 30, 2016, Mother admitted Child was a CHINS.  On January 13, 2017, the trial court held a dispositional hearing and entered its dispositional decree as to Mother on January 19, 2017.  As part of the dispositional decree, Mother was required to refrain from drug use and disallow drug use in Child's presence; participate in a mental health assessment, a substance abuse evaluation, and a parenting assessment; submit to random and scheduled drug screens; complete an assessment for family drug court; participate in counseling services; and attend supervised visits with Child.

[4]     On January 24, 2017, Father appeared for a CHINS fact finding hearing and admitted Child was a CHINS.  Based on Parents' admissions, the trial court adjudicated Child a CHINS.  On February 3, 2017, the trial court held a dispositional hearing and issued a dispositional decree ordering Father to refrain from drug use; participate in a mental health assessment and substance abuse evaluation; submit to random and scheduled drug screens; participate in counseling services; and attend supervised visits with Child.

---

[2] Mother's other two children, J.D. and T.H., were also subject to CHINS proceedings but are not a part of this termination proceeding.  During the proceedings herein, J.D. and T.H. were returned to Mother's care but it is unclear under what circumstances they were reunified with Mother.

[5] On March 18, 2017, Mother married T.W., who had stabbed Father in the altercation that prompted DCS intervention. On May 19, 2017, the trial court held a review hearing. DCS presented evidence Mother completed her mental health and substance abuse assessments, but she had not engaged in the services recommended by those assessments. Mother had participated in supervised visitation with Child, but she had missed several drug screens. At some point after the dispositional hearing in February 2017, Father was incarcerated[3] and did not participate in services.

[6] On November 3, 2017, the trial court held a review hearing. Mother was engaged in family therapy and supervised visitation with Child. Mother had submitted drug screens for a portion of the reporting period, she stopped doing so in September and the first half of October 2017, and she reengaged with drug screens just prior to the review hearing. Mother attended twelve individual therapy sessions but cancelled or failed to attend twenty therapy sessions.

[7] On April 13, 2018, the trial court held a review hearing. Mother did not attend and had stopped participating in services because "she didn't believe services were necessary." (Tr. Vol. II at 133.) Mother had "gone months" without visiting with Child. (*Id*.) At some point between the review hearing in November and the review hearing in April, Father was released from incarceration but chose not to engage in services.

---

[3] The reason for Father's incarceration is unclear from the record.

[8] On November 2, 2018, the trial court held a review hearing. In July 2018, Mother was arrested for dealing in a narcotic, dealing in a controlled substance, and trafficking with an inmate, who was alleged to be T.W. Mother pled guilty to dealing in a narcotic and was sentenced to four years of probation. From February to October 2018, Mother refused to engage in services, but shortly before the November 2 hearing, Mother contacted DCS and expressed an interest in reengaging with services. Father was arrested in June 2018, was incarcerated, and had not engaged in services.

[9] On November 8, 2018, DCS filed its petition for involuntary termination of parental rights. DCS attempted to engage Mother in services, but she was uncooperative. On May 22, 2019, the trial court held a fact-finding hearing on DCS's termination petition. Mother and Father both attended. In response to DCS's repeated concerns regarding Mother's relationship with T.W., Mother testified that she had divorced T.W., but she could not recall the county in which her dissolution decree was issued. The trial court ordered Mother to submit her dissolution decree within ten days of the termination hearing; she did not do so, and the trial court noted its disbelief that such a decree existed. On June 6, 2019, the trial court issued its order terminating Parents' rights to Child.

# Discussion and Decision

[10] We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge

credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[11] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[12] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:

>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[13] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[14] Parents do not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem

does not challenge the findings of the trial court, they must be accepted as correct."). Parents challenge the trial court's conclusions that the conditions under which Child was removed were not likely to be remedied, that continuation of the parent-child relationship posed a threat to Child's well-being, and that termination is in Child's best interests. Mother alone challenges the trial court's conclusion that a satisfactory plan existed for Child after termination.

### Reasonable Probability Conditions Would Not Be Remedied

[15] The trial court must judge a parent's fitness to care for her child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Child was removed from Parents' care due to their drug use and Child's exposure to criminal activity, including Mother's then-boyfriend and subsequent husband stabbing Father in a failed drug deal.

[16] Regarding the reasonable probability the conditions under which Child was removed from Parents' care would not be remedied, the trial court found that Father was incarcerated for a majority of the proceedings and never engaged in services; that Mother engaged in services, but was sporadically compliant; and that both parents were still involved in drug use. The trial court found:

"[Mother] has been dishonest throughout these proceedings. She has no credibility and cannot be believed or trusted." (App. Vol. II at 46.)

[17] Mother argues she has demonstrated the conditions under which Child was removed had been remedied because her two younger children had been returned to her care. While the record of the proceedings confirms Mother's two younger children were returned to her care, the record is unclear about the circumstances of that reunification. DCS presented evidence that Mother was not compliant with services as they were ordered in the CHINS adjudication of Child. The trial court found in its order that "[Mother's] recollection of events is not very good, unless they are of benefit to her." (*Id*. at 48.) Mother's argument is an invitation for us to reweigh the evidence or judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses).

[18] Mother also contends DCS did not provide her adequate services and visitation to facilitate reunification with Child. A challenge to the services offered during the CHINS proceedings cannot be used to overturn the termination of parental rights. *See In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) ("failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law"). Additionally, DCS presented evidence it provided Mother with multiple referrals to substance abuse treatment and individual therapy, but Mother inconsistently participated. DCS reengaged with Mother twice after she stopped participating in services, and DCS offered her opportunities to comply with drug screening requirements even after

Mother moved to another county. The trial court noted in its order that Mother's "expressed desire to re-engage in services was half-hearted." (App. Vol. II at 48.)

[19]     Father argues his incarceration has made it difficult to participate in services and, if given a chance, he would be interested in resuming services upon his release from incarceration. However, as the trial court noted, Father was released from incarceration for a period during the CHINS proceeding and did not take affirmative steps to engage in services during that time. Father's argument is an invitation for us to reweigh the evidence or judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses).

[20]     Despite any progress Mother made in regard to her other children, she has not been compliant with services as ordered in the dispositional order regarding Child. She is also unable to attack the termination of her parental rights by claiming DCS failed to provide her services. Father did not engage in services when he was able. Based thereon, the evidence before the court supported the court's unchallenged findings, which support the court's conclusion the circumstances would not be remedied.[4]  *See In re K.T.K.*, 989 N.E.2d 1225,1234

---

[4] Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need decide only if the evidence and findings support the trial court's conclusion as to one of these two requirements. *See In re L.S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs find only one requirement to terminate parental rights). Because the trial court's findings supported its conclusion that the conditions under which Child was removed from Parents' care would be not be remedied, we need not consider Parents' argument regarding whether the continuation of the Parent-Child relationship poses a risk to Child's well-being.

(Ind. 2013) (mother's recent sobriety outweighed by her history of substance abuse and neglect of her children).

## Child's Best Interests

[21] In determining what is in Child's best interests, a trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Child's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[22] Regarding Child's best interests, the trial court found that while Mother was awarded custody of Child as part of a paternity proceeding, she "acknowledged, due to her long time use of heroin, that [Child] was essentially in the care and custody of his paternal grandparents[.]" (App. Vol. II at 44.) Child was present at the altercation between Father and T.W., and it was undisputed that Child "was traumatized by the events he witnessed[.]" (*Id.* at 45.) While Mother purported to love Child, the trial court found her "relationship with [T.W.] is much more important than her relationship with [Child]" based on the fact that

she lied about being divorced from T.W., has a child with T.W., and continues to have a relationship with T.W. despite the harm Child suffered because of T.W.'s stabbing of Father. (*Id*. at 47.) Finally, the trial court found: "[Child] is doing well in his current placement. He is active in sports and making good grades. He is adamant that he does not want to return to [Mother]." (*Id*. at 48.)

[23] Mother argues that despite her non-compliance with services, she has the "means to provide adequate drug-free housing, stability, safety and supervision for Child" just as she has done for her two younger children that were placed back in her care. (Br. of Appellants at 27.) However, in addition to the trial court's findings regarding Child's best interests, the family case manager testified termination was in Child's best interests because

> [Child] deserves permanency. He deserves to not be concerned about needing leave the home he's comfortable in. He, um, he deserves a home that's going to be free of drug use, um, where he doesn't have to be concerned about, um, his parents being incarcerated, um, and where he's going to go, um, if that were to happen.

(Tr. Vol. II at 106.) Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses).[5] Based on the trial court's findings regarding Child's

---

[5] Father does not make an argument regarding this element of termination of parental rights, except to say he does not think termination of his parental rights is in Child's best interests.

best interests, the family case manager's testimony, and our holding *supra* that the trial court's findings supported its conclusion that there was a reasonable possibility the conditions under which Child was removed would not be remedied, we conclude the trial court's findings support its conclusion that termination of Parents' rights was in Child's best interests. *See In re A.I.*, 825 N.E.2d 798, 811 (Ind. Ct. App. 2005) (termination in child's best interests based on totality of the evidence, including parents' substance abuse and non-compliance with ordered services), *trans. denied*.

## Satisfactory Plan

[24] Pursuant to Indiana Code section 31-35-2-4(b)(2)(D), parental rights cannot be terminated unless DCS provides sufficient evidence of a satisfactory plan for the care and treatment of the child following termination. The trial court found Child's relative placement sought to adopt him upon the termination of Parents' rights. Mother[6] argues that "maintaining the status quo, i.e. Child remaining in relative placement care while Mother or Father implements services is a very satisfactory plan for the care and treatment of Child." (Br. of Appellants at 28.) In light of the fact that this family has been involved with DCS for over two years with very little progress toward reunification, we cannot agree. *See In re*

---

[6] The trial court found Father consented to Child's adoption by relative placement. Father does not challenge that finding.

*S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008) (adoption is satisfactory plan for child's care and treatment after termination).

# Conclusion

The trial court's findings support its conclusions that the conditions under which Child was removed from Parents' care would not be remedied, that termination of parental rights was in Child's best interests, and that there was a satisfactory plan for Child's care following termination of Parents' rights. Accordingly, we affirm the involuntary termination of Parents' rights to Child.

Affirmed.

Najam, J., and Bailey, J., concur.